

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF MICHIGAN

**Ricardo Sherman,**

   **Plaintiff,**

   **-v-**

Case:2:13-cv-12803
Judge: Lawson, David M.
MJ: Whalen, R. Steven
Filed: 06-26-2013 At 02:31 PM
CMP SHERMAN V DETROIT COMMUNITY HEA
LTH CONNECTION, INC.,ET AL (EB)

**Detroit Community Health Connection Inc.,
a Michigan Corporation, Dr. Aneela Yagoob,
an individual, and Nurse Lee, an individual,
both jointly and severally.**

   **Defendants.**

---

| | |
|---|---|
| Ricardo Sherman | Attorney for Defendant |
| Plaintiff Pro Se | Detroit Community Health |
| 2900 18th Street Apt. 1-C | Connection, Inc. |
| Detroit, MI 48216 | 13901 E. Jefferson |
| 313-262-6315 | Detroit, MI 48215 |
| | 313-832-6300 |
| | |
| Attorney for Defendant | Attorney for Defendant |
| Dr. Aneela Yagoob | Nurse Lee |
| 611 Martin Luther King Jr. Blvd. | 611 Martin Luther King Jr. Blvd. |
| Detroit, MI 48201 | Detroit, MI 48201 |
| 313-832-6300 | 313-832-6300 |

---

## CIVIL COMPLAINT

# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF MICHIGAN

Ricardo Sherman,

    Plaintiff,

-v-

Detroit Community Health Connection Inc.,
a Michigan Corporation, Dr. Aneela Yagoob,
an individual, and Nurse Lee, an individual,
both jointly and severally.

    Defendants.

Case No.
Judge:
Magistrate:

| | |
|---|---|
| Ricardo Sherman<br>Plaintiff Pro Se<br>2900 18th Street Apt. 1-C<br>Detroit, MI 48216<br>313-262-6315 | Attorney for Defendant<br>Detroit Community Health<br>Connection, Inc.<br>611 Martin Luther King Jr. Blvd.<br>Detroit, MI 48201<br>313-832-6300 |
| Attorney for Defendant<br>Dr. Aneela Yagoob<br>611 Martin Luther King Jr. Blvd.<br>Detroit, MI 48201<br>313-832-6300 | Attorney for Defendant<br>Nurse Lee<br>611 Martin Luther King Jr. Blvd.<br>Detroit, MI 48201<br>313-832-6300 |

## CIVIL COMPLAINT

1

NOW COMES Plaintiff, Ricardo B. Sherman, In Pro Per, and for his

complaint, states as follows:

## INTRODUCTION

Principles are the foundation of laws in which every single thing stands. In both medicine and health care, a quintessential principle is that the doctor comes for the benefit of the sick, remaining free of all intentional injustice and of all mischief. Duty is a human action, which is exactly conformable to the laws, which require us to obey them. The Defendants denied the Plaintiff this basic doctrine of care and breached their legal duty of performance.

## SUBJECT MATTER JURISDICTION

1. Plaintiff, Ricardo Sherman, is a protected citizen as defined in the 14th Amendment of the Constitution of the United States and at all times relevant to this action has resided of the city of Detroit, county of Wayne, and State of Michigan.

2. That Defendant, Detroit Community Health Connection, Inc. is a corporation licensed to conduct business in the State of Michigan, to the knowledge, information and belief of Plaintiff.

3. Defendant, Dr. AneelaYagoob is an individual licensed to practice medicine and resides in the city of Dearborn, county of Wayne, and State of Michigan, to the knowledge, information and belief of the Plaintiff.

4. Defendant, Nurse Lee is a licensed nurse and resides in the city of Detroit, county of Wayne, and State of Michigan to the information,

knowledge and believe of the Plaintiff.

6   The Court has jurisdiction to hear this action pursuant to violations by

the Defendants of 42 U.S.C section 1981, 28 U.S.C. 1332, 42 U.S.C.

Section 1983, Section 504 of the Rehabilitation Act of 1973 and Title II

of the Americans with Disabilities Act of 1990.

## FACTUAL BACKGROUND

7.  Plaintiff is a sixty-one-year-old male with the disability of C.O.P.D.

and takes the prescribed medication of Albuterol , Budesonide,

Ipratropium, and Advair. (**SEE EXHIBIT A, B,)**

8.  That disability, as defined in the Americans with Disabilities Act of

1990 is a "physical or mental impairment that substantially limits a major

life activity."

9.  That C.O.P.D. substantially limits the breathing , physical movement

and mobility of an individual with this condition.

10.That breathing, physical movement and mobility, is a major life

activity as defined in the Americans with Disabilities Act of 1990.

11.Plaintiff has been a consumer of Defendant, Detroit Community

Health Connection since the year 2001.

12.Plaintiff became a patient to Dr. Yagoob in the year 2009.

13.From the Plaintiff's initial visit, Dr. Yagoob conversations with

Plaintiff consisted of converting him to her Islamic faith.

14.On November 5, 2010, Plaintiff made a written complaint against Dr.
Yagoob because she was withholding his medication from him by
refusing to write prescription for his re-fills, along with her inappropriate
religious conversations. (**SEE EXHIBIT C** )

15.Plaintiff also reported Dr. Yagoob's inappropriate conversations in the
patient waiting room and also in her private office and her refusal to
write re-fills for his medications to the Department of Homeland
Securities.(**SEE EXHIBIT D**)

## CAUSATION

.   16. Plaintiff incorporate paragraphs 1-15 as though stated herein.

17. On May 20, 2013, Plaintiff saw Dr. Yagoob for the purpose of obtaining
a prescription from her to refill his Albuterol solution, Budesonide, solution,
and Ipratropium solution to be dispensed through nebulizer machine.

18. Plaintiff informed Dr. Yagoob that his medicine is filled and supplied by
MED4HOME to deliver at his home via UPS branch of United States Postal
Service.

19. Plaintiff informed Dr. Yagoob that the prescriptions must be faxed to
MED4HOME and that the fax number for MED4HOME is located in
Plaintiff's chart.

4

20. That on or about June 5, 2013, Plaintiff received a telephone call from Defendant, MED4HOME instructing him to go to medical records at the doctor's office in regards to the prescription to refill his meds.

21. Plaintiff called Defendant Detroit Community Health Connection on Martin Luther King Jr. Blvd and relayed the information that he was instructed to go to medical records in regards to the refill of his meds.

22. Plaintiff was informed that he must make an appointment with Dr. Nancy Resnick, a different doctor, as Dr. Yagoob no longer worked at this office location.

23. On June 10, 2013, Plaintiff gave Nurse Lee his medications, which consisted of an Atrovent inhaler, package of Albuterol 0.083% solution, Budesonide 0.25 solution and Ipratropium 0.02% solution and asked her why these medications weren't faxed to MED4HOME.

24. An employee sitting at the sign-in desk intervened and replied, " We don't have to fax nothing in. We do this as a courtesy, so don't expect us to be faxing in no prescriptions."

25.On June 10, 2013, Plaintiff was seen by Dr. Nancy Resnick.

24. Plaintiff was informed by Dr. Nancy Resnick that "Dr.Yagoob dropped the ball," by not turning the paperwork in to MED4HOME. (which listed Dr. Yagoob's State Reg. Number along with the NPI number.

25. Plaintiff handed Dr. Nancy Resnick his Atrovent inhaler, a small package which contained Albuterol, and a small package which contained Budesonide for the purpose of the doctor knowing the exact medication that Plaintiff is prescribed, as the dosage and other information was on the packages.

26. The Plaintiff's exact medications with the label on them were placed physically in Dr. Resnick's hands for the purpose of the doctor writing the correct prescription with the correct dosage.

27. Dr. Resnick informed Plaintiff that the prescription for his refill of medications would be faxed today.

28. Plaintiff left the clinic under the impression that the refill of his medications written by Dr. Nancy Resnick were faxed to MED4HOME.

28. Plaintiff waited for his medicine to arrive via UPS.

29. On June 20, 2013, Plaintiff called MED4HOME and inquired why his medication was not shipped to him.

30. Plaintiff was told by MED4HOME operator that the doctor wrote a prescription for inhalers instead of for medication to be used in the nebulizer machine. (SEE EXHIBIT E)

31. On June 21, 2013, Plaintiff spoke with Defendant Nurse Lee over the telephone concerning correcting the prescription from inhaler to solution for

6

nebulizer machine.

32.Defendant, Nurse Lee was not concerned about resolving the Plaintiff's concerns.

33. Plaintiff informed Defendant Nurse Lee that he was going to take legal action against Detroit Community Health Connections Inc.

33. Defendant, Nurse Lee replied, "Don't think that you are going to get refills," and then she hung up the phone.

34. Defendant, Nurse Lee intentionally deprived Plaintiff of refill of his medications.

35. In intentionally depriving Plaintiff of the refill of his medications, Nurse Lee abused the patient.

36. Defendant, Detroit Community Health Connection Inc. has a policy which allows patients to be abused by capriciously denying patients their medications and also deny patients their doctor's appointments if they are only five minutes late for an appointment.

37. Defendant, Dr. Yagoob refused to cause Plaintiff's refill medication to be properly faxed to the medical supplier, MED4HOME in retaliation of Plaintiff reporting her to the Homeland Securities and to her supervisor, Dr. Erlington.

38. Defendant, Dr. Yagoob's one last act toward Plaintiff before she left the

7

clinic at Detroit Community Health Connection Inc. for private practice was to deny filling out the proper paperwork and having it faxed along with the refill of Plaintiff's medications to MED4HOME.

39. That Defendant, Dr. Yagoob's non-action of refusing to fill out the proper paperwork for the Plaintiff to receive his medications was a malicious and intentional act of revenge against Plaintiff for reporting Dr. Yagoob to her supervisor and the Department of Homeland Securities.

40. Defendants, Detroit Community Health Connection Inc., Dr. Yagoob, and Nurse Lee discriminate against Black patients who come to them for medical and health needs.

41. Defendants, Detroit Community Health Connection Inc., Dr. Yagoob, and Nurse Lee treat Black patients despicably and discriminatorily. Nurse Lee displays an attitude that the patients are at her mercy as to rather or not she will administer her nursing duties to them.

## COUNT I

## VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973

42. Plaintiff incorporate paragraphs 1-41 as though stated herein.

43. Section 504 of the Rehabilitation Act of 1973 prohibit covered health care and human service providers and institutions from discriminating

8

against persons with disabilities in the provision of benefits or services.

44. Defendants, Detroit Community Health Connection Inc., Dr. Yagoob, and Nurse Lee discriminated against Plaintiff, a black man with the disability of C.O.P.D. by denying Plaintiff his medications of Albuterol, Budesesonide, and Ipratroprium solution by contumaciously refusing to fax in the proper paperwork to MED4HOME on two separate occasions.(SEE EXHIBIT C)

45. Defendants Dr. Yagoob, Detroit Community Health Connection Inc., and Nurse Lee does not deny access and withhold medication from Mid-Eastern, non-black patients without disabilities.

## COUNT II

## BREACH OF DUTY

46. Plaintiff incorporate paragraphs 1-45 as though stated herein.

47. Duty is a legal or moral obligation. It is obligatory conduct or service. Mandatory obligation to perform. Huey-v-King, 220 Tenn. 189, 415 S.W.2d.136.

48. Defendant, Nurse Lee, breached her duty as being legally and morally obligated to cause Doctor Resnick to correct the refill of the Plaintiff's prescriptions to indicate how many times a day, together with the dosage amount, when on June 21, 2013 over the telephone, she refused Plaintiff's

request and responded, " Don't think that you're going to get refills," and then abruptly hung up the telephone.

49. Defendant, Detroit Community Health Connection Inc., breached its duty of performance by not adhering to the contractual agreement which is in the Plaintiff's files along with his insurance information, to treat Plaintiff's health concerns. (Contractual agreement will be exhibited upon discovery.)

50. To fraternize is to associate with others in a congenial way.

51. Defendant, Dr. Yagoob breached her duty as a professionally licensed physician to remain free of all intentional misjustice and all mischief, by fraternizing with Plaintiff in the form of inviting Plaintiff to her place of worship, presenting a Koran to Plaintiff as a gift, and having personal religious conversations with Plaintiff, which in turn compromised her medical treatment of Plaintiff.

52. Plaintiff reported Defendant, Dr. Yagoob's fraternization breach of duty to the Department of Homeland Securities, as well as with her supervisor, Dr. Erlington, to investigate the matter and resolve it, so the Plaintiff could be treated at the Detroit Community Health Connection without having religious discussion on the subject of Islam.

## DAMAGES

53. Plaintiff incorporate paragraphs 1-52 as though stated herein.

54. A direct and proximate result of Defendants actions of Breach of Duty,

violating the Section 504 of the Rehabilitation Act of 1973 along with Title

II of the American with Disabilities Act of 1990, by denying the Plaintiff

access to correct his refill of prescribed medications, resulted in the Plaintiff

having severe and lasting injuries, mental anguish, anxiety, pain and

suffering, loss of enjoyment of life and aggravation of preexisting

conditions, both present and future.

55. That, said acts were committed in a negligent, willful, and wanton

manner, by Defendants, Detroit Community Health Connection, Inc., Dr.

Aleena Yagoob and Nurse Lee.

**WHEREFORE,** Plaintiff, Ricardo Sherman prays that this Honorable
Court finds the Defendant, Detroit Community Health Connection Inc.,
liable for Violations of Section 504 of the Rehabilitation Act of 1973,
Breach of Duty and Violation of Title II of Americans with Disability Act
of 1990 and award Plaintiff the sum of Two-Hundred-Thousand-
Dollars.(200,000.00), find Defendant, Dr. Aleena Yagoob liable for
Violations of Section 504 of the Rehabilitation Act of 1973, Breach of Duty
and violations of Title II of the Americans with Disabilities Act of 1990, and
award Plaintiff the sum of Two-Hundred-Thousand-Dollars. ($200,000)
find Defendant, Nurse Lee liable for Breach of Duty, Violation of Title II of

11

Americans with Disabilities Act of 1990 and award Plaintiff the sum of Sixty-Thousand-Dollars, ($60,000).also, for the Court to grant with such relief all that it deems just and equitable.

Dated: June 25, 2013

Respectfully submitted by,

*Ricardo Sherman*

Ricardo Sherman
2900 18th Street. Apt. 1-C
Detroit, MI 48216
313-262-6316

EXHIBIT A

CAUTION: Federal law prohibits the transfer of this drug to any other person than patient for whom it was prescribed.

Rx#: 901688912   DL   Med4Home Pharmacy (800) 804-2084
10800 N Congress Ave Kansas City, MO 64153

**Ricardo B Sherman**

**ALBUTEROL 0.083% (NPH) 3 ml**

Use 1 Vial in Nebulizer 4 Times Daily



Prescriber: Aneela Yaqoob   Org Rx Date: 06/11/12
120 Doses   360 ml   8 Refills remaining by 06/10/2013
Fill Date: 08/27/2012   Discard After: 08/27/2013

If you have any questions, call your pharmacist at (800) 804-2084
Call your doctor for medical advice about side effects. You may report side
effects to FDA at 1-800-FDA-1088.

USA

---

CAUTION: Federal law PROHIBITS the transfer of this drug to any other person than patient for whom it was prescribed.

Rx#: 901454537   RB   Med4Home Pharmacy (800) 804-2084
10800 N Congress Ave Kansas City, MO 64153

**Ricardo B Sherman**

**IPRATROPIUM 0.02% (NPH) 2.5 ml**

Use 1 Vial in Nebulizer 4 Times Daily

Prescriber: Aneela Yaqoob   Org Rx Date: 09/01/11
60 Doses   150 ml   6 Refills remaining by 08/31/2012
Fill Date: 04/05/2012   Discard After: 04/05/2013

If you have any questions, call your pharmacist at (800) 804-2084
Call your doctor for medical advice about side effects. You may report side

MADE
IN THE
USA

EXHIBIT
B

2007

Rx#: 901879319   DL   Med4Home Pharmacy (800) 804-2084
10800 N Congress Ave Kansas City, MO 64153

**Ricardo B Sherman**

**BUDESONIDE INH SUSP 0.25mg (TEV) 2ml 30'S**
**(Budesonide Generic for Pulmicort.)**

**Use 1 Vial In Nebulizer Twice Daily Rinse**
**Mouth After Use**

Prescr... ...   Anees Yaqoob   Org Rx Date: 06/11/12
Re... ...   ...00 m   9 Re... s remaining by 06/10/2013
Fill Date... ...06/10/2013  Discard After: 09/30/2013

...call pharmacist at 800-804-2084
...may report side



NDC 0173-0696-01

**ADVAIR DISKUS 250/50**

(fluticasone propionate 250 mcg and salmeterol*50 mcg inhalation powder)

**FOR ORAL INHALATION ONLY**

Each blister contains 250 mcg of fluticasone propionate
...mcg of salmeterol xinafoate, equivalent to
...of salmeterol base, with lactose.

...requires the dispensing of
...with the Medication Guide
...in the carton.



250/50

ADVAIR DISKUS 250/50

*EXHIBIT*
*C*

Detroit Community Health Connections, Inc.
13901 E. Jefferson
Detroit, MI 48215

November 5, 2010

Dear Dr. Elrington:

I have been a consumer of Detroit Community Health Connections, Inc. since 2001 and until recently, have been satisfied with the services. I am a 58-year-old Black man that is being treated under the care of Dr. Yacoob for C.O.P.D.

I have been without respiratory medication for over two weeks and going through an ordeal with Dr. Yacoob to get my medicine. I am being abused by the treatment that I have undergone. I have been back and forth to the clinic located at 611 Martin Luther King on several occasions, which have resulted in over 9 full hours of waiting time, along with making telephone calls to the Med 4 Home Pharmacy.

I began seeing Dr. Yacoob last year. Her conversations about the Islamic religion are troubling me. On my very first visit, she struck up a conversation about religion and made the statement, "being a doctor is not as important to me as serving Allah." At the end of the visit she told me that I should examine the Koran.

On my next visit, she led me out of the examining room into her private office and gave me a Koran. I accepted the book because I was curious as to what this book contained.

Also, I was intrigued by having a long conversation with a doctor in her private office.

Upon reading the first few pages I discerned that the book definitely is not the inspired word of God, but a book written with man's thinking throughout it. Out of respect, I didn't destroy the book or throw it into the garbage. I left the Koran in the laundry room of the apartment where I live, so that a young man living in the building who is a member of the Nation of Islam could read it.

On my next visit, Dr. Yacoob asked me, "do I really believed that Jesus died and was resurrected?" I responded, " Genesis 3:15 was a prophecy concerning Jesus' death and resurrection, and said something to the effect, " God told the serpent, " I shall put enmity between you and the woman and between your seed and her seed. She will bruise you in the head and you shall bruise her in the head." I went on to explain that enmity means strong hatred, as you already know and seed means the word. Therefore a strong rebellion against the woman's seed, which is Christian people and the Devil's people would exist during the last days." My statement caused her countenance to become very agitated. I was only quoting from the Bible and met nothing personal. She continued the conversation and made statements to attempt to break down my faith in Jesus being my Lord and Savior. After about fifteen minutes into the conversation, I asked myself,

"What am I doing sitting in the doctors private office discussing religion instead of my health?"

Dr. Yacoob invited me to come to her mosque, but to make sure that I wore clean clothing, because I would be in the presence of spirituality. I thought to myself, "I dress up and wear appropriate suits and ties when I attend church, so what makes her think that I would not dress for the occasion at her mosque?"
Each time I visit Dr. Yacoob she continues to have conversations about Allah.

I visited her on October 22, 2010 and she talked about the after-life. Again, we left the examining room and went into her private office where she gave me another Koran. This time she asked me to put it in a bag. I told her that she gave me a Koran on a previous occasion but she insisted that I keep it because she was sure that she gave me a different book. She asked me, "Do you know where Cass Street is?" I replied that Cass is a couple of blocks over from where we are now. "Good, on Friday, go to the Islamic Center on Cass near Forrest. Dress in clean clothing. Now do as I say."

I consider myself an intelligent man. I engaged in academic religious discussions with Dr. Yacoob innocently. Now I am beginning to think that she is using her position as a doctor to induce poor, disenfranchised Black people that come to the clinic located in the heart of the Cass Corridor, next door to a N.S.O. and in the middle of an area full of alcoholics and the dregs of society to join her religion. I live several blocks from this Detroit neighborhood, but am not part of what goes on in it.

I admit that I was curious, and wanted to see how far she would go with her beliefs, so I accepted the second Koran from her. This time I put it on the dash board of my car. Later that evening, I dropped it in the parking lot when I visited the post office Downtown. It's difficult for me to disrespect a religion or belief different than mine.

I have come to the conclusion that she's not going to be satisfied until she converts me to her ideology. In the meantime, I am not being treated for my medical condition properly. Dr. Yacoob seems to focus more on her religion than her medical practice. I will stop giving Dr. Yacoob permission to peddle her convictions on me. As my visits have evolved into one-sided endorsements of Islam by Dr.Yacoob. I am displeased that she has such a disregard for my individuality. I listened to her out of curiosity, but at the same time have my own mind. I realize that her job is not the proper venue for her to spew her religious beliefs. Dr. Yacoob doesn't spend the proper amount of time reading my medical chart and diagnosing my illness.

This unorthodox behavior by Dr. Yacoob must stop. I visited her office on October 22, 2010 because I ran out of medication. I went to her for help and expected her to refill my medication in a timely manner.
Dr. Yacoob prescribed albuterol solution instead of inhaler spray. I took the prescription to CVS Pharmacy and was told that they didn't fill the solution. I went back to the clinic on M.L. King on October 25,27 and 28 to resolve the problem, each time I was told that the solution script was faxed to the Med4 Home pharmacy and the inhaler spray was put

in. I called Med 4 Home pharmacy this afternoon and was told that on four occasions, they have faxed a form that would allow them to bill Medicare, but the clinic never filled it out. Today is November 5, and I still haven't gotten the medicine that I saw Dr. Yacoob for back on October 22.

For the pass fourteen days, I have been suffering from severe and lasting injuries, mental anguish, anxiety, pain and suffering, loss of enjoyment of life and aggravation of preexisting conditions. Dr. Yacoob took a Hippocratic oath of ethical professional behavior in the treatment of her patients. I believe that I have been denied this.

I have been treated differently than the way that a prudent doctor would treat a patient. Please do what is in your jurisdiction to resolve this for me and see that I get my much needed medication.

Sincerely,

Ricardo Sherman
2855 18th Street Apt. RA
Detroit, MI 48216
(Tel) 313-556-5195

Department of Homeland Securities
477 Michigan Avenue
Detroit, MI 48226

*EXHIBIT*
*D*

November 1, 2010

To Whom It May Concern:

I am a 58-year-old Black man and Church Deacon that is being treated by Dr. Yagoob for
C.O.P.D. The doctor's office is located at 611 Martin Luther King Blvd in the city of
Detroit. Dr. Yagoob is withholding my medication and refuses to refill vital breathing
medication.

I began seeing Dr. Yagoob last year. Her conversations about the Islamic religion are
troubling me. On my very first visit, she struck up a conversation about religion and
made the statement, "being a doctor is not as important to me as serving Allah." At the
end of the visit she told me that I should examine the Koran.

On my next visit, she led me out of the examining room into her private office and gave
me a Koran. I accepted the book because I was curious as to what this book contained.

Also, I was intrigued by having a long conversation with a doctor in her private office.

Upon reading the first few pages I discerned that the book definitely is not the inspired
word of God, but a book written with man's thinking throughout it. Out of respect, I
didn't destroy the book or throw it into the garbage. I left the Koran in the laundry room
of the apartment where I live, so that a young man living in the building who is a
member of the Nation of Islam could read it.

On my next visit, Dr. Yagoob asked me, "do I really believed that Jesus died and was
resurrected?" I responded, " Genesis 3:15 was a prophecy concerning Jesus' death and
resurrection, and said something to the effect, " God told the serpent, " I shall put enmity
between you and the woman and between your seed and her seed. She will bruise you in
the head and you shall bruise her in the head." I went on to explain that enmity means
strong hatred, as you already know and seed means the word. Therefore a strong rebellion
against the woman's seed, which is Christian people and the Devil's people would exist
during the last days." My statement caused her countenance to become very agitated. I
was only quoting from the Bible and met nothing personal. She continued the
conversation and made statements to attempt to break down my faith in Jesus being my
Lord and Savior. After about fifteen minutes into the conversation, I asked myself,
"What am I doing sitting in the doctors private office discussing religion instead of my
health?"

Dr. Yagoob invited me to come to her mosque, but to make sure that I wore clean
clothing, because I would be in the presence of spirituality. I thought to myself, "I

dress up and wear appropriate suits and ties when I attend church, so what makes her
think that I would not dress for the occasion at her mosque?"
Each time I visit Dr. Yagoob she continues to have conversations about Allah.

I visited her on October 22, 2010 and she talked about the after-life. Again, we left the
examining room and went into her private office where she gave me another Koran. This
time she asked me to put it in a bag. I told her that she gave me a Koran on a previous
occasion but she insisted that I keep it because she was sure that she gave me a different
book. She asked me, "Do you know where Cass Street is?" I replied that Cass is a couple
of blocks over from where we are now. "Good, on Friday, go to the Islamic Center on
Cass near Forrest. Dress in clean clothing. Now do as I say."

I thought to myself, " Is this the way it goes with terrorists? Do they think that Black
people are weak-minded and will take orders so damn easy? How dare her just haul off
and tell me to go to an Islamic Center. Certainly, she is taking my politeness for
weakness.

I consider myself an intelligent man. I engaged in academic religious discussions with
Dr. Yagoob innocently. Now I am beginning to think that she is using her position as a
doctor to induce poor, disenfranchised Black people that comes to the clinic located in
the heart of the Cass Corridor, next door to a N.S.O. and in the middle of an area full of
alcoholics and the dregs of society to join her religion. I live several blocks from this
Detroit neighborhood, but am not part of what goes on in it.

I admit that I was curious, and wanted to see how far she would go with her beliefs, so I
accepted the second Koran from her. This time I put it on the dash board of my car. Later
that evening, I dropped it in the parking lot when I visited the post office Downtown. It's
difficult for me to disrespect a religion or belief different than mine.

I have come to the conclusion that she's not going to be satisfied until she converts me to
her ideology. Which is not going to happen. I'm not going to abandon my relationship
with Jesus and shall always worship him as my Lord and Savior. My mind is not willing
to change it's devout beliefs about Christianity. I will stop giving Dr. Yacoob permission
to peddle her convictions on me. Mine are stronger than hers. I won't have any more
religious discussions when I visit Dr. Yagoob again. They have turned into one-sided
endorsements of Islam. I am displeased that she has such a disregard for my individuality.
I listen to her out of curiosity, but at the same time have my own mind. I realize that her
job is not the proper venue for her to spew her religious beliefs.

I have wrestled with reporting these conversations with Dr. Yagoob to Homeland
Securities for several months. I was conflicted with different thoughts. Some saying,
"No, this can't be true. I'm watching too much television news, with stories about the El-
Quida and extremist groups, Bin Ladden and what-not. Others saying, "Man, go ahead
and at least try to report this unusual experience with my doctor to the proper authorities.
Don't presume that someone else has already reported her and take it for granted that
she's under the surveillance of officials protecting our borders.

I realize that the worst thing I can do is to remain silent. I told two of my friends about these experiences with Dr. Yagoob.

So, here it is, you have my experiences out in the open. Damn, the last thing a 58-year-old Black man living in Detroit want to do is to get involved with governmental authories at any level.

I realize that the government is a complex and busy organization. You have possible relevant facts written down on paper. Take it for what it's worth. I believe that I did the right thing by reporting this unorthodox behavior by Dr. Yagoob.

This is certainly the strangest letter that I have ever written. Please respect the fact that I really don't want my life interrupted with interviews or further contact. I understand that I gave you enough information about my age and medical condition for you to trace me and " insist" that I co-operate with a discovery of more information. (Besides, I must have a return address on the envelope in the event that it gets lost in the mail.) Hopefully, you will keep this letter in your files. America is a great country and I am indebted for the opportunities that they provide to all of its citizens. Regardless of the financial restraints they are born into, each  individual has the opportunity to rise above their environment and status. My allegiance is with Jesus and this country. Every citizen, no matter how patriotic they are, must do their part to ensure that the freedoms we have not only stay intact, but become stronger.


Sincerely,

Ricardo Sherman

EXHIBIT E

**Nancy Resnick**
**OFFICE: SOPHIE WOMACK HEALTH CENTER**
7900 KERCHEVAL ST
DETROIT, MI  482142439
phone: (313) 921-5500
fax: (313) 921-5530

State Reg # MI 101010598

NPI # 1982876850

FOR: **Ricardo Sherman**                    DATE:  June 10, 2013

ADDRESS:  2900 18th St
APT 1C
Detroit, MI  482160000

DOB:     05/19/1952

| RX: | Dispense: | Sig: | Refill: |
|---|---|---|---|
| Atrovent Hfa 17 Mcg/Actuation HFA Aerosol Inhaler | 1 Inhaler | inhale 2 puffs by Inhalation route 4 times per day regularly if short of breath | |
| Budesonide 0.5 Mg/2 Ml Suspension for Nebulization | 60 | inhale 2 milliliters (0.5 mg) by nebulization route 2 times per day | 2 |
| Albuterol Sulfate 2.5 Mg /3 Ml (0.083 %) Solution for Nebulization | 90 Inhaler | inhale 3 milliliters by NEBULIZATION route as needed  3 times per day in nebulizer | 1 |
| Albuterol Sulfate 90 Mcg/Actuation HFA Aerosol Inhaler | 1 Inhaler | inhale 1 puff by inhalation route every 6 hours as needed | |

_____ Dispense As Written

[X] Product Selection Permitted

# New Lawsuit Check List

**Instructions: Put a check mark in the box next to each appropriate entry to be sure you have all the required documents.**

| | |
|---|---|
| ☒ | Two (2) completed **Civil Cover Sheets**. |

| | | |
|---|---|---|
| ☒ | Enter the number of defendants named in your lawsuit in the blank below, add 2 and then enter the total in the blank. <br><br> ___3___ + 2 = ___5___ **Complaints**. <br> # of Defendants          Total <br><br> Received by Clerk: _____ Addresses are complete: _____ | Case:2:13-cv-12803 <br> Judge: Lawson, David M. <br> MJ: Whalen, R. Steven <br> Filed: 06-26-2013 At 02:31 PM <br> CMP SHERMAN V DETROIT COMMUNITY HEA <br> LTH CONNECTION, INC.,ET AL (EB) |

| | |
|---|---|
| ☐ | If any of your defendants are **government agencies**: <br> Provide two (2) extra copies of the **complaint** for the U.S. Attorney and the Attorney General. |

| If Paying The Filing Fee: | If Asking That The Filing Fee Be Waived: |
|---|---|
| ☐   Current new civil action filing fee is attached. <br><br> Fees may be paid by check or money order made out to: <br><br> **Clerk, U.S. District Court** <br><br> Received by Clerk: _____ Receipt #:_____ | ☒   Two (2) completed **Application to Proceed in District Court without Prepaying Fees or Costs** forms. <br><br><br> Received by Clerk: _____ |

## Select the Method of Service you will employ to notify your defendants:

| Service via Summons by Self | Service by U.S. Marshal <br>(Only available if fee is waived) | Service via Waiver of Summons <br>(U.S. Government cannot be a defendant) |
|---|---|---|
| ☒   Two (2) completed **summonses** for each defendant including each defendant's name and address. <br><br><br> Received by Clerk: _____ | ☐   Two (2) completed **USM – 285 Forms** per defendant, if you are requesting the U.S. Marshal conduct service of your complaint. <br><br> ☐   Two (2) completed **Request for Service by U.S. Marshal** form. <br><br><br> Received by Clerk: _____ | ☐   You need not submit any forms regarding the Waiver of Summons to the Clerk. <br><br> <u>Once your case has been filed, or the Application to Proceed without Prepaying Fees and Costs has been granted</u>, you will need: <br> • One (1) **Notice of a Lawsuit and Request to Waive Service of a Summons** form per defendant. <br> • Two (2) **Waiver of the Service of Summons** forms per defendant. <br><br> Send these forms along with your filed complaint and a self-addressed stamped envelope to each of your defendants. |

### Clerk's Office Use Only

Note any deficiencies here:

Rev. 4/13

⍦JS 44   (Rev. 12/07)

# CIVIL COVER SHEET

County in which action arose _WAYNE_

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

_RICARDO SHERMAN_

**DEFENDANTS** _DETROIT COMMUNITY HEALTH CONNECTION, INC. DR. ANEELA YAGOOB, AND NURSE LEE_

**(b)** County of Residence of First Listed Plaintiff _WAYNE_
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
_RICARDO SHERMAN IN PRO PER_
_2800 18TH STREET APT 1C_
_DETROIT, MI 48216 313-262-6316_

Case:2:13-cv-12803
Judge: Lawson, David M.
MJ: Whalen, R. Steven
Filed: 06-26-2013 At 02:31 PM
CMP SHERMAN V DETROIT COMMUNITY HEA
LTH CONNECTION, INC.,ET AL (EB)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff
☒ 3  Federal Question (U.S. Government Not a Party)
☐ 2  U.S. Government Defendant
☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff

(For Diversity Cases Only) and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | **PERSONAL INJURY** | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 362 Personal Injury - Med. Malpractice | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☒ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
_SECTION 504 of the REHABILITATION ACT OF 1973 TITLE II, AMERICANS WITH DISABILITIES ACT 1990_
Brief description of cause: _AFTER DOCTOR FRATERNIZED WITH PLAINTIFF, DOCTOR DENIED PLAINTIFF HIS MEDICATIONS WHEN PLAINTIFF REPORTED DOCTOR_

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ _460,000.00_

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY

(See instructions) JUDGE _____ DOCKET NUMBER _____

DATE _JUNE 26, 2013_

SIGNATURE OF ATTORNEY OF RECORD _Ricardo Sherman_

FOR OFFICE USE ONLY

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

## PURSUANT TO LOCAL RULE 83.11

1.        Is this a case that has been previously dismissed?       ☐ Yes  ☒ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____

2.        Other than stated above, are there any pending or previously discontinued or dismissed companion cases in this or any other court, including state court? (Companion cases are matters in which it appears substantially similar evidence will be offered or the same or related parties are present and the cases arise out of the same transaction or occurrence.)       ☐ Yes  ☒ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____

Notes :